Frank Delaney v. Commissioner.
Delaney v. Commissioner
Docket No. 82918.
United States Tax Court
T.C. Memo 1961-310; 1961 Tax Ct. Memo LEXIS 41; 20 T.C.M. (CCH) 1602; T.C.M. (RIA) 61310; November 13, 1961
Frank Delaney, Esq., pro se, 60 E. 42nd St., Tallahassee, Fla. John J. O'Toole, Esq., and Arthur S. O'Neill, Jr., Esq., for the respondent. SCOTT Memorandum Findings of Fact and Opinion SCOTT, Judge: Respondent determined deficiencies in petitioner's income tax for the years 1954 and 1955 and additions to the tax under sections 6651(a) and 6653(a) of the Internal Revenue Code of 1954 as follows: Additions to Tax
Year
Deficiency
Sec. 6651(a)
Sec. 6653(a)
1954
$27,221.75
$6,805.44
$1,361.09
1955
36,975.44
1,848.77
1,848.77
The issues for decision are: (1) Whether petitioner received taxable income in the years 1954 and 1955 in addition to the amounts reported on his income tax returns, in the amounts determined by respondent on the basis *42 of unexplained bank deposits in excess of the gross income reported by petitioner; (2) Whether petitioner realized income from the receipt of dividends in 1955 which was not reported on his income tax return; (3) Whether petitioner is entitled to deductions for interest on business indebtedness in the amount of $1,000 and contributions in the amount of $250.36 for the year 1954, and deductions for interest on business indebtedness in the amount of $1,000 and other business expenses in the amount of $4,040 for the year 1955, these deductions having been claimed by petitioner on his income tax returns and disallowed by respondent; and (4) Whether petitioner had reasonable cause for the delinquent filing of his 1954 income tax return and whether any part of petitioner's underpayment of tax, if any, for each of the years 1954 and 1955 is due to negligent disregard of the rules and regulations. Each party has conceded certain other issues raised in the pleadings. Findings of Fact Petitioner filed his Federal income tax returns for the years 1954 and 1955 with the district director of internal revenue at Jacksonville, Florida, on May 10, 1956, and October 19, 1956, respectively. *43 During the taxable years here involved he was engaged in the practice of law in New York City. Petitioner was admitted to practice law in New York City in 1921 and has been there engaged in the practice of law since that year. When petitioner commenced practing, he was associated with other lawyers and commencing in 1923 formed a partnership with another lawyer which lasted until 1941. Since 1941 he has maintained his own office and practiced independently. During the first few years of his independent practice he employed on lawyer and one stenographer. Thereafter he had various employees and by 1957 or 1958 he was employing three lawyers and three or four stenographers or clerks. Petitioner always kept in active touch with all of the cases in his office, assigning the lawyers employed by him certain work to do for him with respect to these cases. Petitioner has had as clients during the course of his practice a number of large corporations and a number of prominent individuals connected with the field of motion pictures and theatrical productions. In 1945 or 1946 petitioner purchased a building at 66th Street and Fifth Avenue in New York City and reorganized it into a cooperative *44 apartment. He handled the organization of this cooperative apartment including both the business and legal aspects thereof. From the time petitioner organized this cooperative apartment venture until 1953, its operation was highly successful. During the taxable year 1954 petitioner deposited to his account in the Corn Exchange Bank Trust Company a total amount of $72,132.98. Many of the deposits made were in even amounts of $1,000 or $2,000. There was one deposit in an even amount of $5,000, one deposit of $4,594.60 in April 1954, and a deposit on December 15, 1954 in the amount of $11,517.66. In addition there were some deposits varying in amounts from $3,000 to $4,000 and a number of deposits from $200 to $500. Petitioner kept a diary in 1954 in the back of which he jotted down notations with respect to amounts received as fees and from whom received. This book showed total monthly amounts as follows: January
$ 6,300.00
February
400.00
March
April
3,275.00
May
$ 300.00
June
2,600.00
July
August
September
1,613.40
October
4,304.84
November
200.00
December
5,654.50
Total
$24,780.24 *
*45 In a few instances there are deposits shown on petitioner's bank statements which coincide in amount and in time with fees noted in the diary, but in most instances there is no correlation between the deposits shown on the bank statements and the fees noted in the diary. For the year 1955 petitioner made deposits in his bank account at the Corn Exchange Bank Trust Company in the amount of $92,354.68. Many of the deposits made by petitioner in 1955 were in even amounts of $1,000 and $2,000 and there were a number in even amounts of $2,500 and $3,000, there being only four individual deposits in 1955 in excess of $3,000; an amount of $3,146 on March 9, 1955; a deposit of $3,693.14 on May 2, 1955, and one of $3,111.24 on May 9, 1955; and a deposit of $9,530.59 on July 1, 1955. Petitioner made notations of fees received by him in a lawyer's diary for the year 1955 and from whom such fees were received, which showed total fees in the following amounts: January
$ 184.71
February
1,000.00
March
April
200.00
May
6,111.24
June
8,169.82 *
July
12,780.59
August
1,000.00
September
2,850.00
October
3,925.98 *
November
1,819.16
December
6,159.67
Total
$44,201.17
*46 A fee in the amount of $9,530.59 listed on July 1, 1955, coincides with the deposit on that date heretofore set out. Certain other fees listed in this diary also coincide with deposits in like amount shown on the bank statements but not all of the fees listed have corresponding individual deposits in like amounts. Petitioner reported as his gross income on his return for 1954 the total amount of the receipts as set forth in the diary kept by him as heretofore set out, and in 1955 reported total receipts of $44,368.44. During the year 1954 there was deposited by Elizabeth Stathatos a total of $2,112.60 in petitioner's account. This amount was repaid by petitioner to an attorney representing Elizabeth Stathatos. A deposit in the amount of $2,000 was made by a client of petitioner's named Price into petitioner's account in 1954 and petitioner paid this amount to Cummings and Lockwood on her behalf. In 1955 Victoria Smith deposited to petitioner's account the amount of $1,500, which he subsequently repaid to her. Petitioner was unable to explain any other *47 specific bank deposits except those representing fees which have been reported by him. The deposits in petitioner's account in the Corn Exchange Bank Trust Company contained no amounts paid to petitioner as moneys for his clients. None of the work that petitioner did in 1954 and 1955 resulted in his receiving any clients' funds in any case which he deposited to his bank account and paid over to them. Petitioner kept files of the cases in his office which contained all letters received with respect to such cases and copies of letters written by him. He also kept petty cash slips, telephone book, and a checkstub book with notations made on the stubs. In 1953 petitioner suffered financial reverses and at that time the two lawyers and three clerks or stenographers on his office staff all resigned, and for a period thereafter he managed his office and practice alone. At about the same time petitioner's income tax returns for the years 1947 through 1951 were under investigation by internal revenue agents. The investigation ultimately resulted in a determination of deficiencies against petitioner which formed the subject of a prior case in this Court. On June 18, 1959, petitioner received *48 a letter from the district director of internal revenue that the records maintained by him were insufficient for the purpose of verifying his liability for Federal income taxes, and that his business income, personal funds and client escrow funds were comingled, as well as his personal and business expenses. This was the first official notification petitioner received that the records he kept were insufficient. Respondent, in his notice of deficiency, increased petitioner's income for the year 1954 by the amount of $47,483.85 and disallowed a deduction in the amount of $1,000 claimed by petitioner as interest on business indebtedness and a deduction of $250.36 claimed as contributions with the following explanation: (a) You realized taxable income in the amount of $72,132.98 as evidenced by deposits in your account at the Chemical Corn Exchange Bank. Inasmuch as you reported total receipts of $24,649.13 on your return, the difference of $47,483.85 has been added to your reported taxable income (loss). (b)(c)&(d) Your claimed deductions on separate Schedule C attached to your return for * * * Interest on business indebtedness * * * have been disallowed to the extent indicated *49 for the reason that you did not establish these portions of the claimed deductions as allowable under any of the sections of the9 Internal Revenue Code. (e) Your claimed deduction for Contributions has been disallowed for the reason that you did not establish this deduction as allowable under any of the sections of the Internal Revenue Code. For the year 1955 respondent increased petitioner's income as reported by the amount of $48,996.24 and disallowed deductions for interest on business indebtedness and other business deductions in the amounts of $1,000 and $4,040, respectively, with the following explanation: (a) You realized taxable income in the amount of $93,364.68 as evidenced by deposits of $92,354.68 in your account at the Chemical Corn Exchange Bank plus a dividend of $1,060.00, less the allowable $50.00 dividend exclusion. Inasmuch as you reported total receipts of $44,368.44 on your return, the difference of $48,996.24 has been added to your reported adjusted gross income (loss). (b) to (f) inc. Your claimed deductions on separate Schedule C attached to your return for * * * Interest on business indebtedness, * * *, and Other business deductions, *50 have been disallowed to the extent indicated for the reason that you did not establish these portions of the claimed deductions as allowable under any of the sections of the Internal Revenue Code. Respondent also determined, "In accordance with the provisions of section 6651(a) of the Internal Revenue Code, penalty of twenty-five per cent of the tax has been asserted for the year 1954 * * *", and "In accordance with the provisions of section 6653(a) of the Internal Revenue Code, penalty of five per cent of the tax has been asserted for each of the years 1954 and 1955." Opinion The evidence here shows that petitioner in both 1954 and 1955 made numerous deposits in his bank account in amounts up to over $11,000, many of such deposits being in amounts of $1,000 to $3,000. The source and nature of the amounts so deposited are not recorded in any books of account kept by petitioner except to the extent of the notations made in the back of his diary. These notations merely show a date, name, and amount, and in each year account for less than one-half of the amounts deposited in petitioner's bank account. Petitioner, in his testimony, *51 explained $4,112.60 of the deposits in 1954 and $1,500 in 1955 as being amounts deposited in his account which he repaid to the persons making the deposit. Petitioner referred to the deposits which he explained as examples but was unable to explain any other amounts of the deposits even when urged to do so. Other than as to the items totaling $5,612.60 identified as not constituting income, the only explanation offered by petitioner was: Now, with respect to the items of deposit on those bank statements, other than those reported as income from my practice, none of these represents income, fees, gains or any profits of any kind whatever. And I am incapable of explaining, however, each of the items not constituting the income. Under circumstances similar to those here present the respondent's determination of income based upon bank deposits has been often approved by the courts. Where the Commissioner has made such a determination the burden is upon petitioner to show error therein. Thomas B. Jones, 29 T.C. 601, 614 (1957) and cases there cited. The evidence here offered by petitioner is insufficient to discharge this burden except to the extent of the items specifically *52 explained as not constituting income. Petitioner offered no evidence with respect to the item of $1,060 of dividend income included in his 1955 income in the notice of deficiency except to state that he had seen the communication from Baker-Weeks with respect to these dividends but could not account for the item. He stated he was sure he was not personally entitled to any dividends from Baker-Weeks as he had no stock or investments from which he could have gotten anything. Petitioner apparently did not deny that he had received the amount of $1,060 from Baker-Weeks as shown in the communication, but thought it was not for his personal account. This explanation is inadequate to overcome the presumption of correctness of respondent's determination. Petitioner offered no testimony or other evidence with respect to the deductions disallowed by respondent and offered no explanation of the late filing of his 1954 income tax return. Respondent is sustained as to his disallowance of the deduction of $1,000 for interest on business indebtedness in each of the years 1954 and 1955, the deduction of $250.36 for charitable contribution in 1954, and the deduction of $4,040 for other business *53 expenses in 1955 for failure of petitioner to offer any evidence to overcome the presumption of correctness of his determination. The burden is also on petitioner to establish that his failure to file his 1954 return until more than 5 months after the date upon which it was due to be filed was due to reasonable cause. William M. Bebb, 36 T.C. - (Apr. 27, 1961). We sustain respondent's determination of a 25 percent addition to the tax under section 6651(a) of the Internal Revenue Code of 1954 for failure of proof on the part of petitioner. The recital of the type of records kept by petitioner as set forth in our findings shows that they were inadequate to reflect the income from a law practice of the type engaged in by petitioner. Apparently, petitioner not only received fees, but on occasion handled the money of clients, but so far as the evidence shows he kept no regular set of books in the years here involved. Petitioner offered some testimony which apparently was directed toward establishing that no part of the deficiency here involved was due to the negligent or intentional disregard of the respondent's regulation requiring the keeping of adequate records. *54 Petitioner has filed no brief in this case although at the trial he was granted time within which to file an original and reply brief and both dates have now passed. From the testimony petitioner appears to contend that his records, considered in conjunction with his case files, were adequate, that respondent did not inform him of the inadequacy of his records until after the years here involved although his tax liability for prior years had been investigated and ultimately resulted in a trial before this Court, and that his personal situation was such that his time for recordkeeping was limited. None of these reasons justify a conclusion that petitioner's failure to keep records which adequately reflected his income was not due to negligent disregard of the regulations. A lawyer of the long experience which petitioner had in practice with clients of the type that the evidence shows he represented, certainly would be expected to know the type of records which would adequately reflect his income. The burden of showing that his failure to comply with the regulations was not negligent is on petitioner. David Courtney, 28 T.C. 658, 669 (1957) and cases there cited. Petitioner *55 has failed to sustain this burden. We sustain respondent's determination, except as to the items conceded by him at the trial and on brief, and also as to the amounts of $4,112.60 for 1954 and $1,500 for 1955 which we hold should be excluded from petitioner's income. Decision will be entered under Rule 50. Footnotes
*. The monthly summary shows this total although it is not a correct addition of the monthly figures shown. The page for July shows a fee of $700 which is not shown in the monthly summary.↩
*. These totals are as shown in the diary. Individual amounts shown added to $8,175.82 in June and $3,025.98 in October.↩